# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 3:17-cv-247 JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Phoday Baba Phattey, | ) | [Re: Motions at docs. 23 and 25] |
| a/k/a Foday Fatty, | ) | |
| | ) | |
| Defendant. | ) | |

## I. MOTIONS PRESENTED

At docket 23 defendant Phoday Baba Phattey, a/k/a Foday Fatty ("Fatty"), moves for summary judgment. The motion is supported by a memorandum at docket 24. At docket 25 the United States of America ("the United States") opposes the motion and cross moves for summary judgment. At docket 26, Fatty opposes the United States' motion and replies in support of his motion. The United States replies at docket 27. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The United States seeks to denaturalize Fatty pursuant to 8 U.S.C. § 1451(a). The United States contends that Phoday Baba Phattey and Foday Fatty are the same person.  To support this assertion, the United States relies on comparison of fingerprints obtained from Phattey and from Fatty.  The comparison shows that Phattey and Fatty are the same person.[1]  Rather than admitting or denying allegations in the Complaint that Phattey and Fatty are the same person, in his Answer Fatty invokes his Fifth Amendment privilege against self incrimination.  In his motion papers, Fatty concedes that invocation of the privilege permits drawing negative inferences.[2]  Fatty's position in the litigation relies on the application of a statute of limitation, not on the proposition that Phattey and Fatty are different individuals.  The court concludes on the basis of the fingerprint comparison and the negative inference that may be drawn from the invocation of the Fifth Amendment that Phattey and Fatty are the same person.

The record before the court shows that in September of 1995 Fatty (using that name) entered the United States in New York.  He presented a passport issued by The Gambia and a non-immigrant United States visa giving a birth date in 1969.  Fatty sought asylum and withholding of deportation by filing a Form I-589 with the INS. Eventually, his effort to obtain asylum was denied   An immigration court granted Fatty's request for voluntary departure, ordering him to depart by July 4, 1996.  Fatty did not

---

[1]Doc. 25-2.

[2]Doc. 26 at p. 4.

voluntarily depart, and the government's efforts to find and deport him were unsuccessful.

In September of 1996 Fatty (using the name Phattey) submitted Form I-589 to the INS seeking asylum and withholding of deportation. On that Form I-589 Fatty represented that his name was Phoday Baba Phattey, that he was born in 1968, and that he was a national of Mauritania who had last arrived in the United States in Miami. This time Fatty was successful in obtaining asylum. An immigration judge granted his application in September of 1997.

In November of 2004 Fatty (using the Phattey name) submitted a Form I-485 to USCIS to register as a permanent resident or adjust status. In support he submitted a Form G-235A setting out biographical information. On that form Fatty stated that he was born in 1968 in Mauritania and that he had never used any other name.

Fatty (using the Phattey name) submitted a Form N-400 Application for Citizenship in April of 2010. On that form Fatty repeated that he was born in Mauritania in 1968. He left blank the space for listing other names he had used. His response to the inquiry whether he had ever given false or misleading information to any U.S. official while applying for any immigration benefit was "No."[3] Question 24 on the N-400 Form asked, "Have you **ever** lied to any U.S. government official to gain entry or admission into the United States?" Fatty answered "No."[4] Fatty also responded in the negative to the question asking if he had ever been ordered to be removed or deported. Fatty

---

[3]Doc. 25 at p. 9.

[4]*Id.*

signed the Form N-400 indicating under penalty of perjury that his application was true and correct.

Fatty was interviewed about his citizenship application on July 27, 2010. At that time he again averred that his N-400 application was true and correct.[5] His application for citizenship was then approved. He took the citizenship oath on August 20, 2010, and was issued a naturalization certificate on that date.[6]

### III. STANDARD OF REVIEW

**A. Motions for Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

---

[5]*Id.* at p. 10.

[6]Doc. 25-18, p. 2, Certificate No. 32456261.

[7]Fed. R. Civ. P. 56(a).

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9]*Id.*

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

-4-

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[11] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[12] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[13] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[14] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[15]

**B. Revocation of Citizenship**

The burden of proof applicable to the motion at docket 25 is very high. The Supreme Court has held:

> [T]he Government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." The evidence justifying revocation of

---

[11]*Id.* at 323.

[12]*Id.* at 323-25.

[13]*Anderson,* 477 U.S. at 248-49.

[14]*Id.* at 255.

[15]*Id.* at 248-49.

-5-

citizenship must be "'clear, unequivocal and convincing'" and not leave "'the issue in doubt.'"[16]

### IV. DISCUSSION

Section 1451(a) of Title 8 provides for the institution of proceedings to revoke and set aside orders admitting a person as a naturalized citizen and to cancel that person's certificate of citizenship when such were "illegally procured or were procured by concealment of a material fact or by willful misrepresentation." The United States' evidence is clear, unequivocal, and convincing. The evidence does not leave the issue in doubt. The evidence laid out in Section II above demonstrates that Fatty procured citizenship illegally because, as a person who had not been lawfully admitted to permanent residence, he was not eligible to apply for citizenship.[17] Furthermore, Fatty procured citizenship by concealing and willfully misrepresenting material facts. It follows that his citizenship should be revoked unless the action to revoke is untimely.

The pending motion turns on what, if any, statute of limitation applies to litigation seeking to revoke a naturalized citizen's citizenship pursuant to 8 U.S.C. § 1451(a). Fatty relies on 28 U.S.C. § 2462 which states that, except as Congress may have otherwise provided, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise shall not be entertained unless commenced within five years from the date when the claim first accrued."

---

[16]*Fedorenko v. United States*, 449 U.S. 490, 505 (1981) (internal citations omitted).

[17]8 U.S.C. §§ 1427 (a) and 1429.

While the statute of limitation issue Fatty raises here was not addressed in *Kunghys v. United States*,[18] it is to be noted that there the Supreme Court approved a revocation sought 28 years after citizenship was granted.[19] There are also circuit court decisions approving revocation long after citizenship was granted.[20] More directly to the issue being litigated here, the Second Circuit has held that an earlier statute authorizing revocation of citizenship (like § 1451(a)) "contains no provision for limitations, nor is there any other federal statute applicable to the case."[21]

For Fatty to successfully rely on § 2462, the court would need to hold that revocation of citizenship is punitive in nature. In *John Oluf Johannessen v. United States*,[22] the government sued to cancel a certificate of citizenship on the ground that it was fraudulently and illegally procured. The government brought the action pursuant to a predecessor to §1451(a) enacted on June 29, 1906. Johannessen contended that because that law was enacted after he received his certificate of citizenship, its use to reach back in time to cancel his certificate would violate the Constitution. He made several arguments, each dismissed by the Court as lacking in merit. Of particular importance to the issue before this court the Supreme Court disposed of his argument that the statute violated the Constitution's prohibition on *ex post facto* laws because the

---

[18]485 U.S.759 (1988)

[19]The United States' briefing incorrectly states that the period was 34 years, apparently because the United States measured the period from the time citizenship was granted to the time the Supreme Court ultimately decided the case..

[20]*E.g., United States v. Szehinskyj*, 277 F.3d 331 (3rd Cir. 2002) (41 years).

[21]*United States v. Costello*, 275 F.2d 355, 356 (2nd Cir. 1960).

[22]225 U.S. 227 (1912).

law, "imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges."[23]

Fatty argues that under two principles discussed in *Kokesh v. Securities and Exchange Commission*,[24] this court should find that § 1451(a) is punitive in nature, thus making the five-year limitation period provided by § 2642 applicable. In *Kokesh* the Court was required to determine whether an SEC enforcement action seeking disgorgement was punitive in nature, thereby making § 2642 applicable. The Court held that because disgorgement may require payment of amounts in excess of compensatory damages, it imposes a penalty. In reaching that conclusion, the Court wrote: "First, whether a sanction represents a penalty turns in part on 'whether the wrong sought to redress is a wrong to the public, or a wrong to the individual.'"[25] This point is not helpful here. The discussion in the case cited by *Kokesh* involved an observation taken from the common law that private wrongs are not criminal in nature, while public wrongs are often considered criminal in nature. That does not provide insight into whether any particular public wrong is criminal in nature.

Relying on the second principle in *Kokesh,* Fatty argues that "a sanction is a penalty if it is objectively punitive.[26] What the Court actually said was that "a sanction

---

[23]225 U.S. at 242.

[24]137 S. Ct. 1635 (June 5, 2017).

[25]137 S. Ct. at 1638 (quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892).

[26]Docket 24 at p. 5.

-8-

operates as a penalty if it sought 'for the <u>purpose</u> of punishment, and to deter others from offending in like manner' rather that to compensate victims."[27]   The purpose of revoking citizenship is quite obviously to take back something that was not deserved in the first place.  The purpose is not to punish, but rather to restore the status quo.  Revoking one person's citizenship might deter others from attempting to obtain citizenship unlawfully.  However, that does not make deterrence the purpose of revocation.  The purpose of a court awarding damages for medical malpractice is to compensate the victim, although the court's award might deter other physicians from engaging in the same or similar behavior.

Fatty argues that if his citizenship is revoked he will be subject to possible penalties for the wrongful actions in which he engaged to procure his citizenship.  That may be so, but even if it is, it is not this revocation action which would impose penalties.  Penalties could be imposed only through institution of a criminal prosecution.

Guided by *Johannessen* and *Costello*, and the case law approving revocations many years after the grant of citizenship, this court concludes that 28 U.S.C. § 2642 does not apply to actions brought under 8 U.S.C. § 1451(a).

---

[27] 137 S. Ct. at 1638 (citation omitted) (emphasis added).

## V.  CONCLUSION

For the reasons above, the motion at docket 23 is DENIED, and the motion at docket 25 is GRANTED.

DATED this 12th day of September 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT